IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE

| | |
|---|---|
| **COREY HAYES,**<br><br>**Plaintiff,**<br><br>-v-<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANSUNION, LLC and NATIONAL CREDIT SYSTEMS, INC.**<br><br>**Defendants.** | Civil Case Number:<br><br><u>CIVIL ACTION</u><br><br>COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. Identity theft has long been a widespread problem in this country. Over the past decades, identity theft has emerged as one of the fastest growing white-collar crimes in the United States.[1] Millions of Americans annually fall victim to this crime and are required to spend countless hours and untold effort in attempting to undo the resulting harm caused to their credit reports.[2]

2. Plaintiff, Corey Hayes, has been the unfortunate victim of identity theft. Specifically, upon information and belief, at least one individual opened an account under Plaintiff's name, without his knowledge or authorization, which has resulted in a collections debt. This account has destroyed Mr. Hayes's credit with each of the CRAs reporting this account

---

[1] *See, Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 505 (4th Cir. 2007).
[2] Victimization surveys conducted by Synovate for the Federal Trade Commission estimate that, between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone. *See,* Graeme R. Newman & Megan M. NcNally, *Identity Theft Literature Review* 14 (2005), http://www.ncjrs.gov/pdffiles1/nij/grants/210459.pdf (citing Synovate, Federal Trade Commission—Identity Theft Survey Report 7, 12 (2003), http:// www.ftc.gov/os/2003/09/synovatereport.pdf).

-1-

negatively.

3. Rather than working with Mr. Hayes to rectify this unfortunate situation, each of the Defendants refused to remove this fraudulent account from his credit reports, despite the Plaintiff specifically disputing this fraudulent item. Instead, the Defendants have continued to willfully and negligently harm the Plaintiff's credit reports by continuing to associate this fraudulent account with the Plaintiff, thereby severely impacting Plaintiff's life and his ability to obtain credit, causing him distress and anxiety.

4. Plaintiff thus brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging Equifax Information Services, LLC, Experian Information Solutions, Inc., Transunion, LLC and National Credit Systems, Inc. have been negligently, recklessly and knowingly disseminating false information regarding the Plaintiff's credit, namely by continuing to associate Plaintiff with this fraudulent account, particularly after the Plaintiff mailed letters to Defendants specifically advising them of this issue and submitting the necessary supporting documentation.

5. Plaintiff further alleges that the consumer reporting agencies Transunion, Equifax and Experian failed to investigate credit report inaccuracies in response to Plaintiff's disputes.

6. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

## JURISDICTION

7. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in this judicial District pursuant to 28 U.S.C. 1391(b)(2).

## PARTIES

9. Plaintiff, Corey Hayes ("Plaintiff"), is a resident of Jacksonville, Florida and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10. Defendant Equifax Information Services, LLC ("Equifax") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

11. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

12. Defendant Experian Information Solutions, Inc. ("Experian") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

13. Experian is a corporation with its headquarters located in Costa Mesa, California.

14. Defendant Transunion, LLC ("Transunion") is also one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Transunion is a

"consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

15. Transunion is a company with its principal place of business located at 555 West Adams Street, Chicago, IL 60661.

16. Defendant National Credit Systems, Inc. ("NCS") is national collection firm specializing in the recovery of landlord/tenant debts. NCS' is a Georgia corporation with its principal place of business at 1775 The Exchange SE Suite 300, Atlanta, GA 30339.

## **FACTUAL ALLEGATIONS**

17. A number of years ago, Plaintiff discovered that he was the victim of identity theft. Sometime later, Plaintiff noticed that a substantial collections account was appearing on his consumer credit reports from Equifax, Experian and Transunion (collectively the "CRAs"), which was opened without his knowledge or authorization to do so. Specifically, a National Credit Systems ("NCS") debt account for $23,038.

18. Accordingly, on multiple occasions in the two years prior to the filing of this action, Plaintiff disputed this fraudulent and inaccurate account with the CRAs, in which he clearly advised the CRAs that he was the victim of identity theft, and this information should be removed and blocked. However, Equifax, Experian, Transunion and NCS each refused to investigate, correct or remove the fraudulent NCS Account from the Plaintiff's credit file.

19. Upon information and belief, Equifax had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

20. Upon information and belief, Experian had all the information they needed to

locate, investigate, and correct this inaccurate information, but just failed to do so.

21. Upon information and belief, Transunion had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

22. After the CRA's and NCS's repeated failures, Plaintiff took further action, including filing a police report with the Jacksonville Sheriff's office and completing a sworn FTC Identity Theft Affidavit, in which he listed the account as it was appearing on his credit reports despite the fact that it was not his and he had never opened it, nor had he ever lived at the purported rental property for which the debt originated.

23. Accordingly, on multiple occasions in 2024, including as recently as July 15, 2025, Plaintiff again disputed the fraudulent account with the CRAs. With those disputes, Plaintiff included copies of the sworn FTC Identity Theft Affidavit and the police report.

24. Upon information and belief, NCS was notified of Plaintiff's numerous disputes.

25. Following receipt of Plaintiff's dispute, Experian refused to investigate, correct or remove the fraudulent NCS account information from the Plaintiff's credit file. Instead, that information is still being reported to this day.

26. Upon information and belief, Experian had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

27. Equifax also refused to investigate, correct or remove the fraudulent NCS account information from the Plaintiff's credit file. Instead, that information is still being reported to this day.

28. Upon information and belief, Equifax had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

29. Similarly, Transunion refused to investigate, correct or remove the fraudulent NCS

account information from the Plaintiff's credit file. Instead, that information is still being reported to this day.

30. Upon information and belief, Transunion had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

31. Experian, Equifax, Transunion and NCS were each notified of Plaintiff's multiple respective disputes, but refused to investigate and/or remove inaccurate reporting.

32. At all times pertinent hereto, Defendants' violations of the FCRA were willful, and carried out in reckless disregard for consumer's rights as set forth under section 1681c and 1681i of the FCRA. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

33. Additionally, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

34. In any event, Defendants are liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

35. As a direct and proximate result of the Defendants' willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in his daily life, by the impact that this derogatory information has had on his credit score and his ability to secure credit. For example, Plaintiff has been denied credit due to these derogatory inaccuracies, including causing substantial disruption to his business.

36. Defendants' violations of the FCRA further caused the Plaintiff great distress, anger, annoyance and frustration in her daily life, and subjected the Plaintiff to abusive credit reporting practices from which Plaintiff had a substantive right to be free

## COUNT I
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i
### AGAINST EQUIFAX

37. Plaintiff incorporates by reference paragraphs 1-36 as though fully set forth herein.

38. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

39. The FCRA provides that:

> "***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

40. On numerous occasions in the two years preceding this Complaint, including in or around April and July of 2025, the Plaintiff initiated a dispute with Equifax requesting that they correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent NCS Account. Plaintiff provided information and documentation showing that he was the victim of identity theft and had not opened this account.

41. However, Defendant Equifax repeatedly failed to adequately investigate the Plaintiff's disputes, as required by the FCRA.

42. Instead, Equifax, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

43. As a direct and proximate result of Equifax's willful and/or negligent refusal to

conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT II
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## AGAINST EQUIFAX

44. Plaintiff incorporates by reference paragraphs 1-36 as though fully set forth herein.

45. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

46. Accordingly, Equifax was required to follow procedures to assure maximum possible accuracy of the credit reports it prepared concerning Plaintiff. However, Equifax failed to do so.

47. Were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed the fraudulent NCS Account from the Plaintiff's credit report, especially after the Plaintiff repeatedly (1) disputed the account with Equifax, and (2) provided Equifax with documents and information definitively establishing that he was the victim of identity theft and that this account was not opened by him.

48. Furthermore, were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided Equifax with the information reflecting that this information was inaccurate.

49. As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

## COUNT III
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c-2
### AGAINST EQUIFAX

50. Plaintiff incorporates by reference paragraphs 1-36 as though fully set forth herein.

51. On numerous occasions, including in or about April and July of 2025, Plaintiff initiated a dispute with Equifax requesting that they correct and remove the fraudulent NCS Account, as this account was fraudulently opened by an individual other than the Plaintiff.

52. In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

53. Equifax refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

54. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Equifax continued to report this fraudulent information.

55. As a direct and proximate result of Equifax's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT IV
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i
### AGAINST EXPERIAN

56. Plaintiff incorporates by reference paragraphs 1-36 as though fully set forth herein.

57. At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

58. The FCRA provides that:

> "*if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the*

*consumer* and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, **the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file** in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

59. On numerous occasions in the two years preceding this Complaint, including in or around April and July of 2025, the Plaintiff initiated a dispute with Experian requesting that they correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent NCS Account. Plaintiff provided information and documentation showing that he was the victim of identity theft and had not opened this account.

60. However, Defendant Experian repeatedly failed to adequately investigate the Plaintiff's disputes, as required by the FCRA.

61. Instead, Experian, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

62. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT V
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## AGAINST EXPERIAN

63. Plaintiff incorporates by reference paragraphs 1-36 as though fully set forth herein.

64. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting

agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

65. Accordingly, Experian was required to follow procedures to assure maximum possible accuracy of the credit reports it prepared concerning Plaintiff. However, Experian failed to do so.

66. Were Experian to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed the fraudulent NCS Account from the Plaintiff's credit report, especially after the Plaintiff repeatedly (1) disputed the account with Experian, and (2) provided Experian with documents and information definitively establishing that he was the victim of identity theft and that this account was not opened by him.

67. Furthermore, were Experian to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided Experian with the information reflecting that this information was inaccurate.

68. As a direct and proximate result of Experian's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

## COUNT VI
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681c-2
## AGAINST EXPERIAN

69. Plaintiff incorporates by reference paragraphs 1-36 as though fully set forth herein.

70. On numerous occasions, including in or about April and July of 2025, Plaintiff initiated a dispute with Experian requesting that they correct and remove the fraudulent NCS Account, as this account was fraudulently opened by an individual other than the Plaintiff.

71. In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

72. Experian refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

73. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Experian continued to report this fraudulent information.

74. As a direct and proximate result of Experian's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT VII
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST TRANSUNION

75. Plaintiff incorporates by reference paragraphs 1-36 as though fully set forth herein.

76. At all times pertinent hereto, Transunion was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

77. The FCRA provides that:

> "*if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer* and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file* in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

78. On numerous occasions in the two years preceding this Complaint, including in or around April and July of 2025, the Plaintiff initiated a dispute with Transunion requesting that they

correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent NCS Account. Plaintiff provided information and documentation showing that he was the victim of identity theft and had not opened this account.

79. However, Defendant Transunion repeatedly failed to adequately investigate the Plaintiff's disputes, as required by the FCRA.

80. Instead, Transunion, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

81. As a direct and proximate result of Transunion's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT VIII
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## AGAINST TRANSUNION

82. Plaintiff incorporates by reference paragraphs 1-36 as though fully set forth herein.

83. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

84. Accordingly, Transunion was required to follow procedures to assure maximum possible accuracy of the credit reports it prepared concerning Plaintiff. However, Transunion failed to do so.

85. Were Transunion to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed the fraudulent NCS Account from the Plaintiff's credit report, especially after the Plaintiff repeatedly (1) disputed the account

with Transunion, and (2) provided Transunion with documents and information definitively establishing that he was the victim of identity theft and that this account not opened by him.

86. Furthermore, were Transunion to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided Transunion with the information reflecting that this information was inaccurate.

87. As a direct and proximate result of Transunion 's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

## COUNT IX
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681c-2
## AGAINST TRANSUNION

88. Plaintiff incorporates by reference paragraphs 1-36 as though fully set forth herein.

89. On numerous occasions, including in or about April and July of 2025, Plaintiff initiated a dispute with Transunion requesting that they correct and remove the fraudulent NCS Account, as this account was fraudulently opened by an individual other than the Plaintiff.

90. In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

91. Transunion refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

92. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Transunion continued to report this fraudulent information.

93. As a direct and proximate result of Transunion's willful and/or negligent refusal to

block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT X
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681s-2(b)
## AGAINST NCS

94. Plaintiff incorporates by reference paragraphs 1-36 as though fully set forth herein.

95. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

96. On numerous occasions, including in or about April and July of 2025, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by NCS.

97. Upon information and belief, NCS received notice of these disputes from the credit bureaus.

98. NCS was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

99. Even after the Plaintiff properly disputed this account with the credit reporting agencies, NCS refused to conduct a reasonable investigation and continued inaccurately reporting the fraudulent account on Plaintiff's credit report.

100. NCS's conduct violated section 1681s-2(b) of the FCRA.

101. As a result of NCS's conduct, Plaintiff was harmed, as discussed above

## DEMAND FOR TRIAL BY JURY

102. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

A. Awarding Plaintiff actual damages, statutory damages and punitive damages pursuant to pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

B. Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

C. A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

D. Equitable relief, enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

E. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: July 25, 2025

By:  /s/ Joseph Kanee
Joseph H Kanee, Esq.
Fla. Bar No. 1040922
THE KANEE LAW FIRM, PLLC
1508 SW 23 Street
Fort Lauderdale, FL 33315
(786) 933-2775
joseph@kaneelaw.com

*Attorney for Plaintiff*